WESTERN INVESTORS CORPORATION, Respondent, *v.* RUSSO-ASIATIC
BANK, Appellant.

First Department, February 9, 1923.

Banks and banking — sale of Russian rubles — action to recover over-
payment alleged to have been made through mistake or because of false
representations by defendant — sale made at six to dollar while rubles
were purchasable at Vladivostok at eleven and one-fourth rubles to
dollar — contract did not show agreement to purchase at open market
rate — complaint dismissed.

In an action to recover an alleged overpayment for Russian rubles alleged to
have been made through mistake or because of false representations by the
defendant, it was claimed by the plaintiffs that, at the time of the purchase
of the rubles at the rate of six rubles to the dollar, the prevailing market price
of rubles at Vladivostok was eleven and one-fourth rubles to the dollar.

*Held*, that the contract for purchase was at the rate quoted by the defendant
at six rubles to the dollar, and that the plaintiff did not agree to buy rubles
in the open market if one existed at whatever rate was quoted thereafter.

No action for mistake nor for fraud or deceit nor for breach of duty arising from
agency is made out from the cable correspondence constituting the contract,
nor is there any ambiguity apparent in the terms of the cable contract which
requires testimony to explain it, and, therefore, the complaint should have been
dismissed.

SMITH, J., dissents.

APPEAL by the defendant, Russo-Asiatic Bank, from an order
of the Supreme Court, made at the New York Special Term and
entered in the office of the clerk of the county of New York on
the 28th day of July, 1922, denying defendant's motion to vacate
a warrant of attachment and to dismiss the complaint.

*Evarts, Choate, Sherman & Leon* [*Maurice Leon* of counsel; *John B.
Butler, Jr.*, with him on the brief], for the appellant.

*Pratt & McAlpin* [*Cecil Page* of counsel], for the respondent.

McAVOY, J.:

This motion was originally made to vacate an attachment but
by stipulation in court it was heard as a motion to dismiss the
complaint.

On November 12, 1918, defendant's Vladivostok bank received
from the West Side National Bank of Chicago, the assignor of
plaintiff, a cable as follows: " Can you effect payments allied
controlled territories. Would you credit rubles we crediting dollars
Cable terms selling rubles providing you guarantee not dealing
with enemy."

And the defendant's bank at Vladivostok replied: " Consequence
great fluctuation rates irregularity telegraphic service cannot at

present quote firm rate stop Your guidance to-days rate six if necessary give firm order indicating rate limit shall try do our best."

The next cable in order of sequence said: " Credit two hundred thousand best rate not below six will credit dollars on cable reply."

Then from defendant bank: " Credited two hundred thousand rubles pay Equitable Trust Company New York thirty three thousand three hundred thirty three dollars Send cypher meanwhile give payment orders through Equitable Trust Company New York."

Afterward cable correspondence ensued concerning conditions of the sale relating to the issue of rubles required and to interest to be paid on balance. These matters having been settled satisfactorily a credit of $33,333 was paid to the Equitable Trust Company for defendant's account.

The complaint in the action sets forth that both parties to the contract are engaged in the banking business and that the assignor of plaintiff was so engaged; that in November, 1918, the West Side National Bank of Chicago, plaintiff's assignor, requested defendant to credit its banking house at Vladivostok, with 200,000 rubles at the best rate offerable and defendant thereupon notified the Chicago bank that it had credited its account with 200,000 rubles as requested and asked the Chicago bank to pay to the Equitable Trust Company of New York $33,333 as the price of the rubles credited; that the Chicago bank did so pay for the account of the defendant, to the trust company, as the price of the rubles the sum of $33,333; that this price so demanded and paid to defendant for the rubles was at the rate of six rubles for the dollar. The complaint then alleges:

" *Seventh.* Upon information and belief at all the times herein mentioned there was an open market at Vladivostok for rubles in which rubles were sold for dollars and that on the day when defendant credited said The West Side National Bank of Chicago with said rubles as aforesaid, the prevailing market price of rubles Vladivostok was 11.25 rubles for a dollar, and defendant could have purchased said rubles for said The West Side National Bank of Chicago at said price and credited same to said bank at said price.

" *Eighth.* That by mistake of fact as to the amount which said The West Side National Bank of Chicago should pay to defendant for said rubles, said The West Side National Bank of Chicago overpaid defendant to the extent of Fifteen thousand five hundred fifty-five dollars ($15,555.00) no part whereof has been returned by defendant to said The West Side National Bank of Chicago or this plaintiff although demand therefor has heretofore been duly made."

There is a second cause upon the same sale which counts on a different theory, as though by false representation the defendant bank had induced the plaintiff assignor to pay an excess sum for the rubles over a current or open market rate.

I do not believe that either of these causes can be maintained. Transactions of the sale of credit by a bank are no different from the sale of a draft or check drawn upon the same point; they are pure transactions of purchase and sale and carried out through the relationship created thereby.

There can be no duty spelled out of these cables to buy the rubles in an open market if one existed at whatever rate was quoted thereat; and beside this, nowhere is there any representation in any of the cables that the rate quoted is other than defendant's terms for selling rubles at the time of the sale.

No action for mistake, nor for fraud or deceit, nor for breach of duty arising from agency, is made out from the cabled correspondence, nor is there any ambiguity apparent in the terms of the cable contract which requires testimony to explain it. The order denying the motion to vacate the attachment and dismiss the complaint should be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

CLARKE, P. J., DOWLING and PAGE, JJ., concur; SMITH, J., dissents.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.